**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROCKELLE GREEN-MINOR<br>120 East Street Road, Apt. L3-04<br>Warminster, PA 18974 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : <br> : | No.: |
| v. | : <br> : | |
| | : | JURY TRIAL DEMANDED |
| REGIONAL WOMEN'S HEALTH<br>GROUP, LLC d/b/a AXIA WOMEN'S<br>HEALTH<br>227 Laurel Road, #300<br>Voorhees Township, NJ 08043<br>    and<br>REGIONAL WOMEN'S HEALTH<br>MANAGEMENT, LLC<br>227 Laurel Road, #300<br>Voorhees Township, NJ 08043<br>    and<br>SCOTT DINESEN, DO<br>3335 Byron Drive<br>Doylestown, PA 18902 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | |
| Defendants. | : <br> : | |

**CIVIL ACTION COMPLAINT**

Rockelle Green-Minor (hereinafter referred to as "Plaintiff," unless indicated otherwise)

by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.      Plaintiff has initiated this action to redress violations by Regional Women's Health

Group, LLC d/b/a Axia Women's Health, Regional Women's Health Management, LLC, and Scott

Dinesen, DO (hereinafter collectively referred to as "Defendants") of Title VII of the Civil Rights

Act of 1964 ("Title VII" - 42 U.S.C. §§ 200d *et seq.*), Section 1981 of the Civil Rights Act of 1866

1

("Section 1981" – 42 U.S.C. § 1981), and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.  There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.      This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC").  Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

---

[1] Plaintiff intends to amend her instant lawsuit to include claims under the PHRA once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC").

**PARTIES**

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual with an address as set forth in the caption.

8.      Regional Women's Health Group, LLC d/b/a Axia Women's Health (hereinafter individually referred to as "Defendant RWHG"), upon information and belief, is a healthcare services network that delivers technology and treatment through OB/GYN physicians, breast health centers, high-risk pregnancy centers, laboratories, urogynecology, fertility centers, and more, with a location at the above-captioned address.

9.      Regional Women's Health Management, LLC (hereinafter individually referred to as "Defendant RWHM"), upon information and belief, is a healthcare services network that delivers technology and treatment through OB/GYN physicians, breast health centers, high-risk pregnancy centers, laboratories, urogynecology, fertility centers, and more, with a location at the above-captioned address.  Defendant RWHM was listed as Plaintiff's employer on her paystubs and/or W-2 form.

10.     Scott Dinesen, DO (hereinafter individually referred to as "Defendant Dinesen"), owner/operator of Dinesen Associates, P.C., OBGYN and Infertility,[2] is a high-level manager, and decision maker, concerning terms and conditions of employment for employees (including Plaintiff) of Dinesen Associates, P.C., OBGYN and Infertility and as a provider of Defendant RWHG and Defendant RWHM, including but not limited to compensation, terms and conditions of employment, payroll, and hiring and firing decisions.  Defendant Dinesen is located at the above-captioned address.

---

[2] Upon information and belief, Dinesen Associates, P.C. was a member provider of Defendant RWHG and Defendant RWHM until Dinesen Associates, P.C. closed in or about December of 2023.

11. Because of their interrelation of operations, common ownership of management, centralized control of labor relations, human resources and training, common ownership/governance or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they may be treated as a single and/or joint employer.

12. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted, at all times relevant herein, in the course and scope of their employment with and for Defendants.

## **FACTUAL BACKGROUND**

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. Plaintiff was hired by Defendants on or about December 6, 2021, as a Patient Service Representative ("PSR"), working from Defendants' provider practice, Dinesen Associates, P.C., located at 599 West State Street, Doylestown, PA.

15. Plaintiff was originally primarily supervised by Defendants' Practice Manager, Cassandra Dinesen (Caucasian, hereinafter "CD"), and then by Practice Manager, Shannon Whitaker (African-American, hereinafter "Whitaker") – beginning in or about July of 2023. Plaintiff was also generally supervised by PSR Supervisor, Valerie Bessetti (Caucasian, hereinafter "Bessetti"), and Defendant Dinesen.

16. Throughout Plaintiff's employment with Defendants, Plaintiff was a hard-working employee who performed her job well.

17. Plaintiff is a black (African-American) female, and for the bulk of her employment with Defendants, she was the only black employee at Defendants' Doylestown practice location.

18.     In or about the year leading up to Plaintiff's unlawful termination (discussed further *infra*) Plaintiff was subjected to discrimination, disparate treatment, and a hostile work environment by Defendants' predominantly Caucasian and or non-black management and employees based on her race.

19.     In fact, Bessetti made it very clear from the start that she did not like Plaintiff, treated her in a rude and demeaning manner, and was routinely overhead complaining to other Caucasian employees in the office that they did not need Plaintiff.

20.     Additionally, in or about November of 2022, a Caucasian co-worker, Briana Van Loon (last name unknown, hereinafter "Van Loon") showed Plaintiff a Tik Tok video of a Caucasian male dipping fried chicken into Kool Aid, to which a black male, sarcastically responds, "just call me a nigger."

21.     Plaintiff found the aforementioned video to be extremely offensive and complained to Bri that she was offended and that it was "not ok."

22.     Plaintiff then complained of the aforementioned racially offensive Tik Tok video to CD, who informed Plaintiff that Defendants "ha[ve] diversity training" and talked about "making that training available to all," but, upon Plaintiff's information and belief, her colleagues were not required to undergo such training.

23.     Additionally, in or about early 2023, a provider/midwife, Shannon Weaver (Caucasian, hereinafter "Weaver") approached Plaintiff stating, "I heard that you have a dark-skinned person coming."  When Plaintiff expressed her shock and confusion at Weaver's statement, Weaver stated, "We are going to have another black person in the office now, the new provider is black? How do you feel about that?"

5

24.     Plaintiff was appalled by Weaver's racially discriminatory statement but informed Weaver that she thought it would be good.  Weaver then replied, "We are finally gonna have some color in the office. Hopefully you two don't do any black magic on us."

25.     Plaintiff walked away from Weaver's aforesaid racially discriminatory comments feeling both extremely offended and uncomfortable.

26.     Plaintiff then complained of this second instance of racially offensive behavior by Defendants' employees again to CD.   Specifically, Plaintiff informed CD that this was not the first time something racist had been said to her while working for Defendants and that it made her feel unsafe and disrespected in the workplace.

27.     Defendant Dinesen then reached out to Plaintiff to discuss her complaints of race discrimination, largely dismissing Plaintiff's concerns and informing her that no one was "getting fired" over this and explaining how he often had friends of different races/nationalities come to his house for dinner – ostensibly to convince Plaintiff that he, himself, was not racist.

28.     Upon Plaintiff's information and belief, Weaver was not counseled or disciplined for her behavior, but for the next several months, Weaver treated Plaintiff in a condescending and demeaning way, giving Plaintiff more work than her Caucasian counterparts, and overly nitpicking and scrutinizing her work.

29.     Thereafter, Whitaker came aboard, and she and Bessetti continued to overload Plaintiff with work, even though several of her Caucasian counterparts (*i.e.,* Emily Everly, Erica – last name unknown, Jen – last name unknown) would be sitting right next to her doing nothing.

30.     In fact, Plaintiff was known for having the highest call volume in the office and a great work ethic, for which she was praised prior to her aforesaid complaints of race discrimination.

31. However, in the months leading up to her termination, Plaintiff was being treated in a rude and demeaning way by Defendants' predominantly Caucasian management.

32. Whenever Plaintiff inquired as to whether one of her Caucasian co-workers could handle part of the call volume and that work was not being proportionately assigned to them, she was berated, disciplined for allegedly being insubordinate, and required to perform a disparate mount of work compared to her Caucasian co-workers, by both Bessetti and Whitaker.

33. In fact, Bessetti and Whitaker began to increase their vitriolic comments in the office, stating to other employees that they were hiring other (Caucasian) employees so that they could terminate Plaintiff.

34. Plaintiff was then abruptly terminated on or about August 17, 2023, for pretextual reasons, including but not limited to (1) purportedly having threatened Bessetti, which was patently untrue;[3] and (2) having refused to sign a write-up that she did not agree with, which was also inaccurate, as Plaintiff had merely requested if there was a written policy requiring her to sign a write-up she did not agree with – among other pretextual reasons.

35. Prior to her termination, Plaintiff had complained multiple times to several levels of management that she believed she was being treated unfairly, discriminatorily, and being targeted. However, Plaintiff's concerns went unaddressed.

36. Instead, Plaintiff continued to be the recipient of hostility and animosity, with management continuing to make passive aggressive and entirely misplaced racially related statements, such as advising Plaintiff that they were hanging up "more diverse paintings" shortly

---

[3]In fact, Plaintiff was informed by another employee, Medical Assistant, Allie Bailey (Caucasian, hereinafter "Bailey") that Whitaker has allegedly complained that Plaintiff had threatened Bessetti, ostensibly at Bessetti's behest, as Whitaker had not been present for any interactions between Plaintiff and Bessetti that day, while Bailey had, and had not witnessed any threats. Tellingly, as further evidence of Whitaker's lack of trustworthiness/credibility, upon information and belief, a few months following Plaintiff's termination, Whitaker herself was terminated for purportedly obtaining a job for her sister within Defendants and then stealing her sister's paychecks by having them funneled into her own checking account.

before Plaintiff's termination, ostensibly to demonstrate that the workplace could not possibly be a racist environment.

37.    Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated because of her race and/or her objections to/complaints of race discrimination.

### COUNT I
### Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")
### ([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)
### -Against Defendant RWHG and Defendant RWHM Only-

38.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39.    During Plaintiff's employment with Defendants, she was subjected to discrimination, retaliation, and a hostile work environment through disparate/derogatory treatment, and pretextual admonishment and/or discipline, as outlined *supra* because of her race.

40.    Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendants' management, but her concerns were not meaningfully investigated and/or addressed; and instead, Defendants' management continued to subject Plaintiff to hostility, animosity, and disparate treatment because of her race.

41.    Plaintiff was then terminated on or about August 17, 2023, for completely pretextual reasons (set forth *supra*).

42.    Plaintiff believes and therefore avers that she was subjected to a hostile work environment and retaliation because of her race and/or her objections to/complaints of race discrimination.

43.    Plaintiff believes and therefore avers that her race was a motivating and/or determinative factor in Defendants' decision to terminate her employment.

8

44.     These actions as aforesaid constitute violations of Title VII.

**COUNT II**
**Violation of 42 U.S.C. Section 1981**
**([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**
**-Against All Defendants-**

45.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.     During Plaintiff's employment with Defendants, she was subjected to discrimination, retaliation, and a hostile work environment through disparate/derogatory treatment, and pretextual admonishment and/or discipline, as outlined *supra* because of her race.

47.     Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendants' management, but her concerns were not meaningfully addressed and/or investigated; and instead, Defendants' management continued to subject Plaintiff to hostility, animosity, and disparate treatment because of her race.

48.     Plaintiff was then terminated on or about August 17, 2023, for completely pretextual reasons (set forth *supra*).

49.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment and retaliation because of her race and/or her complaints of race discrimination.

50.     Plaintiff believes and therefore avers that but for her race, Defendants would not have terminated her employment.

51.     Defendant Dinesen is personally liable for such violations because he personally oversaw hiring, discipline, and firing actions as a provider for Defendants, and perpetuated the aforesaid unlawful race practices.

52.     These actions as aforesaid constitute violations of Section 1981.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.      Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.      Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.


                                        Respectfully submitted,

                                        **KARPF, KARPF & CERUTTI, P.C.**


                              By:       _____
                                        Ari R. Karpf, Esq.
                                        3331 Street Rd.
                                        Two Greenwood Square, Suite 128
                                        Bensalem, PA 19020
                                        (215) 639-0801

Dated:  May 23, 2024


10

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

CIVIL ACTION

Rockelle Green-Minor           :

v.                             :

                               :

Regional Women's Health Group, LLC d/b/a Axia Women's Health, et al.     NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                         ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                            ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X )

5/23/2024                                                       Plaintiff
_____      _____      _____
**Date**                  **Attorney-at-law**              **Attorney for**

(215) 639-0801           (215) 639-4970                   akarpf@karpf-law.com
_____      _____      _____
**Telephone**              **FAX Number**                   **E-Mail Address**

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff  to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___120 East Street Road, Apt L3-04, Warminster, PA 18974_____

Address of Defendant: ___227 Laurel Road, #300, Voorhees Township, NJ 08043; 3335 Byron Drive, Doylestown, PA 18902___

Place of Accident, Incident or Transaction: ___Defendants place of business_____

---

*RELATED CASE, IF ANY:*

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when **Yes** is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes [ ]    No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously  terminated action in this court?    Yes [ ]    No [X]

3. Does this case involve the validity or infringement of a patent   already in suit or any earlier numbered case pending or within one year previously  terminated action of this court?    Yes [ ]    No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes [ ]    No [X]

I certify that, to my knowledge, the within case    [ ] **is** / [X] **is not**   related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___5/23/2024_____    _____    ___ARK2484 / 91538___
   *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

*A.*    *Federal Question Cases:*

- [ ] 1. Indemnity Contract, Marine Contract, and All Other Contracts
- [ ] 2. FELA
- [ ] 3. Jones Act-Personal Injury
- [ ] 4. Antitrust
- [ ] 5. Patent
- [ ] 6. Labor-Management Relations
- [X] 7. Civil Rights
- [ ] 8. Habeas Corpus
- [ ] 9. Securities Act(s) Cases
- [ ] 10. Social Security Review Cases
- [ ] 11. All other Federal Question Cases
  *(Please specify):* _____

*B.*    *Diversity Jurisdiction Cases:*

- [ ] 1. Insurance Contract and Other Contracts
- [ ] 2. Airplane Personal Injury
- [ ] 3. Assault, Defamation
- [ ] 4. Marine Personal Injury
- [ ] 5. Motor Vehicle Personal Injury
- [ ] 6. Other Personal Injury *(Please specify):* _____
- [ ] 7. Products Liability
- [ ] 8. Products Liability – Asbestos
- [ ] 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___Ari R. Karpf_____ , counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c ) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: ___5/23/2024_____    _____    ___ARK2484 / 91538___
   *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS 44  (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

GREEN-MINOR, ROCKELLE

**(b)** County of Residence of First Listed Plaintiff    Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS

REGIONAL WOMEN'S HEALTH GROUP, LLC D/B/A AXIA WOMEN'S HEALTH, ET AL.

County of Residence of First Listed Defendant    Camden
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- 1 U.S. Government Plaintiff
- **X** 3 Federal Question *(U.S. Government Not a Party)*
- 2 U.S. Government Defendant
- 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

### REAL PROPERTY
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- 365 Personal Injury - Product Liability
- 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

### CIVIL RIGHTS
- 440 Other Civil Rights
- 441 Voting
- **X** 442 Employment
- 443 Housing/ Accommodations
- 445 Amer. w/Disabilities - Employment
- 446 Amer. w/Disabilities - Other
- 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty
**Other:**
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

### LABOR
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

### IMMIGRATION
- 462 Naturalization Application
- 465 Other Immigration Actions

### BANKRUPTCY
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark

### SOCIAL SECURITY
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

### FEDERAL TAX SUITS
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 480 Consumer Credit
- 490 Cable/Sat TV
- 850 Securities/Commodities/ Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- **X** 1 Original Proceeding
- 2 Removed from State Court
- 3 Remanded from Appellate Court
- 4 Reinstated or Reopened
- 5 Transferred from Another District *(specify)*
- 6 Multidistrict Litigation - Transfer
- 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of Title VII, Section 1981 and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    **X** Yes    No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE   5/23/2024

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**Print**    **Save As...**    **Reset**